USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _12/29/2020_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

DE QUAN LU, DIAN JIN JIANG, QI GUI     :
GUO, and WEI QIN ZHU,       :
          :
            Plaintiffs,     :
          :
      - against -          :       17-CV-7291 (VEC)
          :
RED KOI, INC d/b/a RED KOI ORGANIC     :       OPINION AND ORDER
SUSHI LOUNGE, LIN LIN, C&H Fortune,     :
Inc., Ying Chen, Jing Xin Dong, Xiaohua Zhu     :
a/k/a Ken Zhu, John Does #1-10, Jane Does #1-     :
10, and Company ABC #1-10,       :
          :
            Defendants.    :

-------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Plaintiffs, four delivery workers who were employed at a sushi restaurant, allege a series of violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Two of the Defendants, Xiaohua Zhu ("Zhu") and Ying Chen ("Chen"), have moved to dismiss the Second Amended Complaint, arguing that Plaintiffs failed sufficiently to plead facts from which the Court can infer that they were Plaintiffs' employers. For the reasons discussed below, Zhu's Motion is GRANTED in its entirety, and Chen's Motion is GRANTED in part and DENIED in part.

## I. Background

On September 25, 2017, De Quan Lu, Dian Jin Jiang, Qi Gui Guo, and Wei Qin Zhu, four delivery workers, filed a Complaint against Red Koi Organic Sushi Lounge ("Red Koi"), one of its owners Lin Lin ("Lin"), and unnamed individuals and companies. Compl., Dkt. 1. A few months later, Plaintiffs were granted leave to amend their Complaint so they could add a corporate Defendant, C&H Fortune, Inc., which Plaintiffs allege is an affiliated entity of Red

1

Koi, and three additional individual Defendants, whom Plaintiffs allege were also their

employers, Zhu, Chen, and Jing Xin Dong ("Dong").  First Amended Complaint ("FAC"), Dkt.

21.  Plaintiffs later consented to the dismissal of Red Koi, which had been dissolved, and to the

unnamed Defendants.  Pls. Decl., Dkt. 65; Order, Dkt. 69.  Defendants C&H Fortune, Inc. and

Dong failed to appear in the litigation, and the Court entered Default Judgments as to liability

against them.  Default Judgment, Dkt. 91.  The Court deferred the computation of damages,

attorneys' fees, and costs against them until after the resolution of the claims against the

remaining Defendants.  *Id.*

On February 18, 2020, Defendants Zhu and Chen filed a Motion for Judgment on the

Pleadings, arguing that Plaintiffs have failed to allege sufficient facts to demonstrate that Zhu

and Chen were their employers.  Motion, Dkt. 115.  In response, Plaintiffs requested leave to file

a Second Amended Complaint ("SAC"), which the Court granted.  Dkts. 119, 120.  On March 3,

2020, Plaintiffs filed the SAC, the operative complaint in this litigation.  SAC, Dkt. 121.

Plaintiffs rely heavily on allegations made in state court litigation brought by Lin in which she

alleges that Zhu, Chen, and Dong engaged in corporate misconduct vis-à-vis the Red Koi.  *Id.*

On March 27, 2020, Defendants Zhu and Chen moved to dismiss the SAC pursuant to Federal

Rule of Civil Procedure 12(b)(6).  Motion, Dkt. 124.  Plaintiffs oppose the Motion.  You Decl.,

Dkt. 128.[1]

---

[1]    In response to the motion to dismiss, Plaintiffs filed an attorney declaration setting out legal arguments and factual allegations.  You Decl., Dkt. 128.  The declaration was not accompanied by a memorandum of law.  *Id.*  This filing violated Rule 7.1 of the Southern District of New York's Local Civil Rules, which requires a "memorandum of law, setting forth the cases and other authorities relied upon" and permits "supporting affidavits and exhibits" containing factual information and portions of the record.  Local Civ. R. 7.1.  When a party violates this rule, the Court has discretion to rule against them on this basis alone or to disregard the noncompliant filing in its entirety. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.").  The Court refrains from exercising such discretion here to "avoid penalizing parties harshly for the procedural errors of their attorneys…." *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 453 (S.D.N.Y. 2005).  Plaintiffs' counsel is warned,

In the SAC, Plaintiffs allege six counts of violations of the FLSA and NYLL.  SAC ¶¶ 48–81.  Specifically, Plaintiffs contend that from August 2014 to August 2015, they routinely worked twelve-hour days, from 11:00 A.M. to 11:00 P.M., six days per week for a flat monthly salary of $1,000.  *Id.* ¶¶ 40–41.  When computed to hours worked, Plaintiffs allege they were paid $3.47 per hour, in violation of federal and New York state minimum wage laws.  *Id.* ¶ 41. Plaintiffs further contend that they were never paid overtime wages or spread of hours pay, that they did not receive notice of their rates of pay or weekly records of their compensation, and that Defendants failed to maintain accurate employment records.  *Id.* ¶¶ 43–47.

## II.  Discussion

### A.  Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief."  *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level."  *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).  Even though courts are required to take all of the factual allegations in the complaint as true, courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Where a complaint pleads facts that are 'merely consistent with' a

---

however, that compliance with the rules is not optional.  Counsel is specifically forewarned that failure to adhere to the rules in the future may be met with sanctions.

defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  When considering a Rule 12(b)(6) motion to dismiss, the Court draws all reasonable inferences in the light most favorable to the plaintiff.  *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted).[2]

For an individual to be liable under the FLSA, he or she must be an "employer," which is broadly defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  29 U.S.C. § 203(d).  To limit the broad reach of the statute, which "taken literally would support liability against any agent or employee with supervisory power," *Diaz v. Consortium for Worker Educ., Inc.*, No. 10-CV-1848, 2010 WL 3910280, at *2 (S.D.N.Y. Sept. 28, 2010) (cleaned up), courts have examined "whether the alleged employer possessed the power to control the workers in question . . . with an eye to the 'economic reality' presented by the facts of each case."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (citations omitted).

Four factors inform whether a person is an employer, in what has become known as the "economic reality" test: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Id.* (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)) (cleaned up).  No single factor is dispositive, and these factors must be viewed in the context of the "totality of circumstances."  *Id*.  Both parties agree that the economic reality test determines

---

[2]     In Plaintiffs' Response to Defendants' Motion to Dismiss, Plaintiffs rely on outdated pleading standards. *See* You Decl. ¶¶ 2, 3 (citing Second Circuit decisions on pleading standards from 1988, 2000, and 2002).  In 2007 and 2009, the Supreme Court refined pleading requirements in two seminal decisions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  The Court evaluates Plaintiffs' Second Amended Complaint under the pleading standards now in force.

whether the Defendants are employers under the FLSA.  *See* Defs. Mem. of Law, Dkt. 125 at 5–6; You Decl. ¶¶ 12–13.

Courts apply these same factors to determine whether a particular defendant qualifies as an "employer" under NYLL.  *See Jiao v. Shi Ya Chen*, No. 03-CV-0165, 2007 WL 4944767, at *9 n.12 (S.D.N.Y. Mar. 30, 2007) ("[C]ourts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA.") (citations omitted); *see also Lopez v. Acme Am. Env't Co.*, No. 12-CV-0511, 2012 WL 6062501, at *3 (S.D.N.Y. Dec. 6, 2012) (same) (citation omitted).

In order to state a claim under the standards outlined in *Twombly* and *Iqbal*, plaintiffs must do more than list the four factors that comprise the economic reality test.  *See, e.g., Keawsri v. Ramen-Ya Inc.*, No. 17-CV-2406 (VEC), 2018 WL 279756, at *3 (S.D.N.Y. Jan. 2, 2018) ("[B]oilerplate allegations that simply recite the elements of the economic reality test are insufficient to state a claim."); *Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009) ("[M]ere boilerplate allegations that an individual meets the various prongs of the economic reality test . . . without any supporting details—essentially 'a formulaic recitation of the elements of a cause of action'—are insufficient to raise plaintiffs' right to relief 'above a speculative level' with respect to that individual's liability as an employer under the FLSA.") (citing *Twombly*, 550 U.S. at 555); *Serrano v. I. Hardware Distribs., Inc.*, No. 14-CV-2488, 2015 WL 4528170, at *2 (S.D.N.Y. July 27, 2015) (collecting cases).

**B.  Plaintiffs Have Not Adequately Pled that Defendant Zhu Was Their Employer**

A careful review of the SAC reveals that none of the factual allegations, singly or in combination, regarding Defendant Zhu is sufficient to plead that Zhu was Plaintiffs' employer under the economic reality test.

Four paragraphs of the SAC "simply recite the elements of the economic reality test" or are legal conclusions and are thereby insufficient to state a claim.  Paragraph 24 of the SAC merely states the first, second, and fourth factors of the economic reality test.  SAC ¶ 24 ("At all relevant times, Zhu had the power to hire and fire employees, including the plaintiffs, set their wages and schedules, and retain their records.").  Paragraph 32 recites the third and fourth factors of the test.  *Id.* ¶ 32 ("[E]ach named individual defendant exercised operational control of the defendant restaurant and manage the plaintiffs' employment, including the plaintiffs' payroll records and the rate of their salaries and wages…)."  Paragraphs 24 and 26 alleged in a conclusory fashion that Zhu "constituted an 'employer'" under the FLSA and NYLL.  *Id.* ¶¶ 24, 26.  And the statements in paragraph 25, that Zhu "was involved in the day-to-day operations" of the restaurant and that he "played an active role in managing the business," are nothing more than conclusions routinely found to be insufficient under *Iqbal*.  *Id.* ¶ 25; *Ruixan Cui v. E. Palace One, Inc.*, No. 17-CV-6713, 2019 WL 4573226, at *7 (S.D.N.Y. Sept. 20, 2019) (finding that "conclusory assertions" that defendants were personally and actively involved in the daily management of a corporation's operations were insufficient); *see also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) ("[W]e 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").

The SAC's factual allegation that Zhu was a part owner of Red Koi is not sufficient to satisfy the economic reality test.  The filings from the state court action attached as exhibits to

the SAC allege that Zhu contributed $38,000 to the restaurant and was a 23.75% shareholder. SAC Ex. A ¶¶ 11, 26, 28; SAC Ex. B ¶¶ 7, 12, 14; SAC Ex. C ¶ 7. But "[f]or an individual to be an 'employer,' . . . there must be more than just evidence that the individual is an owner or officer of a company . . . ." *Salomon v. Adderley Indus., Inc.*, 960 F. Supp. 2d 502, 509 (S.D.N.Y. 2013) (cleaned up). *See also Ruixuan Cui*, 2019 WL 4573226, at *7 (collecting cases). Instead, the "individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Salomon*, 960 F. Supp. 2d at 509 (internal citation omitted). On its own, Zhu's ownership interest is insufficient to plead adequately that he is Plaintiffs' employer under the economic reality test.

Next, an exhibit to the SAC asserts that around March 2015, Zhu, referred to as Steven Doe, together with Chen and Dong, "took control of the physical premises of Red Koi" and did not permit Lin to enter. SAC Ex. B ¶ 52. As a preliminary matter, it remains unclear whether Zhu took part in any alleged control of the premises; the next sentence in the Lin Affidavit refers to a letter by Chen and Dong's lawyer, without any reference to Zhu, that forbade Lin from entering the restaurant. *Id*. But, more importantly, allegations that Zhu prevented Lin from entering the restaurant have nothing to do with any actions Zhu may have taken with respect to Plaintiffs. Preventing a person unrelated to Plaintiffs from entering the workplace does nothing to show operational control over Plaintiffs or meet the elements of the economic reality test.

The SAC also alleges that, beginning in March 2015, Zhu and Chen "brought . . . employees to the restaurant." SAC ¶ 29. This statement relies on one of Lin's affidavits in the state court action, in which she asserts that she did "not know the . . . employees" that Zhu and

Chen brought into the restaurant.  SAC Ex. B ¶ 52.[3]  But, as with the allegation that Zhu prevented Lin from entering the premises, this statement has nothing to do with Plaintiffs. Plaintiffs were hired in August 2014 and therefore cannot be one of the new employees brought into the restaurant after March 2015.  Further, the FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer *in relation to an employee* . . . ."  29 U.S.C. § 203(d) (emphasis added).  The economic reality test is used to determine "whether the alleged employer possessed the power to control the *workers in question*."  *Herman*, 172 F.3d at 139 (emphasis added) (citation omitted).  Without any connection to Plaintiffs, this allegation does not support an inference that Zhu was Plaintiffs' employer.

The SAC also alleges that Red Koi and C&H Fortune were affiliated entities with the same ownership structure, SAC Ex. A ¶¶ 42– 46; SAC Ex. B ¶¶ 28–31; SAC Ex. C ¶ 2, and Plaintiffs argue that Zhu, as an owner of both restaurants, may be personally liable "under the theory of successor liability." You Decl. ¶ 11.  The SAC does not include a theory of successor liability, but a complaint does not have to "set out a legal theory" for its claim for relief. Pleading standards instead focus on the factual allegations.  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (quoting 5 A. Wright & A. Miller, Federal Practice and Procedure § 1219, 277–78 (3d ed. 2004)).  While the Court is willing to entertain a theory of successor liability, successor liability does not reach shareholders of the allegedly liable successor entity.  Although the Second Circuit has not decided whether the common law test or the substantial continuity test applies to successor liability in the FLSA context, *see Rotthoff v. New York State Catholic Health Plan, Inc.*, No. 19-CV-4027, 2020 WL 5763862, at *6 (E.D.N.Y. Sept. 28, 2020), under either

---

[3]     Although the Court will accept the allegations in the Lin affidavit as true, inasmuch as Lin was allegedly excluded from the restaurant at this time, SAC Ex. B ¶ 52, it is unclear how she would know exactly who brought the new employees into the restaurant.

test successor liability focuses on whether a *purchaser* is liable for claims against the seller's company.  *See id.* at *6–7; *Patino v. Brady Parking, Inc.*, No. 11-CV-3080, 2017 WL 5198192, at *8–9 (S.D.N.Y. Oct. 31, 2017).  The SAC lacks factual allegations about whether C&H Fortune, Inc. purchased Red Koi and, if so, whether the elements of successor liability under either test have been met.  But even if there were such factual allegations, they would not independently give rise to liability for corporate shareholders of the purchasing company.  Because successor liability is not relevant to Zhu's personal liability, it has no impact on the Court's evaluation of Zhu's Motion to Dismiss.

Finally, while not necessary for the Court's ruling, the Court finds its significant that Lin did not know Zhu's identity until well after Plaintiffs' employment ended, when she took depositions as part of her state court action.  The state court filings incorporated in the SAC allege that for most of Plaintiffs' employment period Lin was at the restaurant "six to seven days per week," SAC Ex. A ¶ 36; SAC Ex. B ¶ 21, and, when the restaurant was busy, she "helped out taking phone calls, serving patrons, and … other hands-on duties."  SAC Ex. A ¶ 37.  Despite this active role, it seems that Lin herself did not know Zhu's identity.  In an affidavit filed on June 10, 2016, in the state court action, Lin referred to Zhu as Steven Doe.  SAC Ex. C ¶ 1; *see also* SAC ¶ 27.  According to Lin,  Chen brought Zhu into the business, she trusted Chen, and she had no reason to inquire into Zhu's identity.  SAC Ex. A ¶¶ 4, 11; SAC Ex. B ¶ 7.  It stretches credulity to believe that Lin, who managed all aspects of a business she owned, would not know Zhu's identity even though Zhu was Plaintiffs' employer.  While this fact is not dispositive on its own, it further supports the conclusion that Plaintiffs have not alleged facts from which the Court can plausibly infer that Zhu was Plaintiffs' employer.

Because the SAC does not adequately allege that Zhu was Plaintiffs' employer, Zhu's

Motion to Dismiss is granted.

**C. Plaintiffs Have Adequately Pled that Defendant Chen Was Their Employer for a Certain Period of Their Employment**

The SAC makes many of the same factual allegations and arguments with respect to

Chen as it does with respect to Zhu.  But the SAC also includes a series of unique factual

allegations that post-date the changes to Chen's position that allegedly occurred in March 2015.

Specifically, the SAC alleges that in March 2015, Defendant Chen began serving "as the

manager of the restaurant, in charge of accounting of daily reviews and profits."  SAC ¶ 29.  The

Court finds helpful Defendants' division of the chronology into an "early period," from

approximately August 2014 to February 2015, and a "late period," from approximately March

2015 to August 2015.  Defs. Mem. of Law at 3.  The Court grants Chen's Motion to Dismiss

with respect to the early period but denies Chen's Motion with respect to the late period.[4]

The allegations and arguments that are identical for both Defendants are as inadequate as

to Chen as they are as to Zhu.  The Court disregards the allegations in the SAC that merely

repeat the elements of the economic reality test or are legal conclusions without factual detail.

*See* SAC ¶¶ 18, 19, 20, 32.  As with Zhu, the Court finds that Chen's ownership interest on its

own is irrelevant to the question of whether he was Plaintiffs' employer.  SAC ¶ 18; SAC Ex. A

¶¶ 8, 26, 28; SAC Ex. B ¶¶ 4, 12, 14; SAC Ex. C ¶ 4.  The Court further disregards allegations

that Chen "brought … employees to the restaurant starting from March 2015," SAC ¶ 29, and

---

[4]     Courts may limit the scope of claims at the motion to dismiss stage of the proceedings.  *See Rotthoff v. New York State Catholic Health Plan, Inc.*, No. 19-CV-4027, 2020 WL 5763862, at *6 n.3 (E.D.N.Y. Sept. 28, 2020*); Nypl v. JPMorgan Chase & Co.*, No. 15-CV-9300, 2018 WL 1276869, at *4 (S.D.N.Y. Mar. 12, 2018) (limiting the time period of the claims at issue at the motion to dismiss stage).

that Chen prevented Lin from entering the restaurant, *id.*; SAC Ex. B ¶ 52, as these allegations are both not relevant to the Plaintiffs' employment and are not factors that bear on the economic reality test.   Similarly, the Court disregards the successor liability argument, which, as with Zhu, is not independently applicable to Chen.

The Court finds, however, that Plaintiffs have stated a claim with respect to the late period of Plaintiffs' employment.   The SAC and its accompanying exhibits clearly allege that Chen's role changed in or about March 2015.   SAC ¶ 29; SAC Ex. A ¶ 38; SAC Ex. B ¶ 23.[5] The SAC alleges that throughout the late period, Defendant Chen was "responsible for managing the accounting" at the restaurant.   SAC Ex. A ¶ 8; SAC Ex. C ¶ 4.   The SAC alleges that this included paying employees, reviewing profits, and keeping records.   SAC ¶ 29; SAC Ex. A ¶¶ 39, 49; SAC Ex. B ¶¶ 24, 34.   The SAC further alleges that Chen had signing authority on the Red Koi business bank account and that he made withdrawals, made purchases with the company debit card, wrote checks to third parties, and executed documents for the restaurant. SAC ¶ 30; SAC Ex. A ¶¶ 52–56, 58, 60; SAC Ex. B ¶ 42.

The Court finds that these allegations are sufficient to state a claim that Chen was Plaintiffs' employer during the late period.   In terms of the economic reality test, Plaintiffs have alleged that for this period of time, Chen "maintained employment records," the fourth factor of the test.   *Herman*, 172 F.3d at 139 (quoting *Carter*, 735 F.2d at 12).   Chen's signing authority on the corporate bank account and the allegations that he made withdrawals, used the company debit card, wrote checks, and executed documents, make it reasonable to infer that Chen

---

[5]      Plaintiffs argue that there remains a question of fact when exactly this "late period" started.   You Decl. ¶¶ 9, 16.   The Court agrees that "[i]n or about early March 2015" is not an exact date.   SAC Ex. A ¶ 38.   While the exact date remains unknown, that has no impact on the Court's decision to dismiss the claims against Chen that occurred before his position allegedly changed.   Ultimately it will be a question for the finder of fact when, if ever, Chen became Plaintiffs' employer.

determined the method of payment, part of the third factor of the economic reality test.  In

*Herman*, the Second Circuit found that "the key question" in assessing whether an individual

determined the method of payment under the third factor is whether the person "had the authority

to sign paychecks" during the relevant period.  *Id.* at 140.  *See also Irizarry v. Catsimatidis*, 722

F.3d 99, 115 (2d Cir. 2013).  Because the exhibits attached to the SAC assert that Chen had

signing authority, issued checks, and paid employees, the Court can reasonably infer that this

factor of the economic reality test has been satisfied.[6]

The Court recognizes that the factual allegations in the SAC only support one or, at best,

two of the factors in the economic reality test.  But courts have repeatedly found that complaints

with factual allegations that satisfy only some of the factors are sufficient to survive a motion to

dismiss.  *See, e.g.*, *Campagnone v. MJ Licensing Co.*, No. 18-CV-6227, 2019 WL 1953931, *3

(S.D.N.Y. May 2, 2019) (finding plaintiff had sufficiently pled that defendants were his

employers because they controlled the conditions of his employment and determined the rate of

payment); *Ramirez v. Riverbay Corp.*, 35 F. Supp. 3d 513, 521 (S.D.N.Y. 2014) (denying a

motion to dismiss after finding that defendants satisfied only factors two and three of the

economic reality test); *Chan v. Triple 8 Place*, No. 03-CV-6048, 2004 WL 1161299, at *1

(S.D.N.Y. May 24, 2004) (holding that "all four factors [of the economic reality test] need not be

present to justify a finding of 'employer' status" under the FLSA).  Especially when the Court

"draw[s] all reasonable inferences in the plaintiff's favor," *Lotes Co. v. Hon Hai Precision Indus.*

---

[6]     Chen argues that these alleged facts only demonstrate that he "served essentially as a bookkeeper," Defs.
Mem. of Law at 10, which, he alleges, is insufficient to meet the economic reality test.  *Id.* at 11.  Although the
Court agrees that this is a close case, the SAC plausibly, albeit just barely, alleges that his role went beyond that of a
bookkeeper.  It will be a question for the jury whether Chen was merely a bookkeeper or whether his role was
expansive enough to satisfy the economic reality test.

*Co.*, 753 F.3d 395, 399 (2d Cir. 2014), as required at the motion to dismiss stage, the Court finds that the SAC adequately pleads that Chen was Plaintiffs' employer during the late period.

Chen argues that the SAC is inadequate because it does not allege that he "ever interacted with any of the Plaintiffs," including during the late period.  Defs. Mem. of Law at 7; *see also id.* at 9–10; Defs. Reply, Dkt. 130 at 2, 8.  But the Second Circuit has found that a person does not need to have "directly come into contact with the plaintiffs, their workplaces, or their schedules" to be an employer under the FLSA.  *Irizarry*, 722 F.39 at 110; *see also Shiqiu Chen v. H.B. Rest. Grp., Inc.*, No. 16-CV-2005, 2020 WL 115279, at *9 (S.D.N.Y. Jan. 9, 2020) ("Operational control does not necessarily require direct contact with employees and workplaces.").  While factual allegations that Chen interacted with Plaintiffs would strengthen the case that Chen was their employer, a lack of interaction does not doom the complaint.

Chen also argues that Lin was Plaintiffs' employer, which "directly undermine[s] and contradict[s] any claim" that Chen was their employer.  Defs. Mem. of Law at 11–13; *see also* Defs. Reply at 1, 6.  The SAC does include several allegations about Lin's role as a manager of the business.  *See* SAC ¶ 16; SAC Ex. A ¶¶ 31, 34–37.  But nothing in the SAC supports Chen's argument that Lin's activities made her the only employer.  In fact, with respect to the late period, the SAC details how Lin stepped back from her duties, allegedly because she trusted Chen to manage the restaurant.  SAC Ex. A ¶ 41; *see also* SAC Ex. B ¶ 26.

In any event, neither the FLSA nor NYLL limit personal liability to a single individual employer.  The FLSA defines employer as "*any person* acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d) (emphasis added).  And, as such, "[p]ersonal liability may be imposed on *employers* for wage and hour violations under both the FLSA and NYLL."  *Solano v. Andiamo Cafe Corp.*, No. 19-CV-3264, 2020 WL 6746052, at *3

(S.D.N.Y. Nov. 17, 2020) (emphasis added).  The caselaw is full of examples in which courts have found more than a single employer personally liable for violations of the FLSA.  *See, e.g.*, *id.* (finding two individuals and a restaurant liable for plaintiffs' FLSA claims); *Morales v. Anyelisa Rest. Corp.*, No. 18-CV-7641, 2019 WL 3430106, at *1 n.1, *4 (S.D.N.Y. July 30, 2019) (finding that plaintiffs' allegations were sufficient to plead that two corporations and five individual defendants were the plaintiff's employers); *Kim v. Kum Gang, Inc.*, No. 12-CV-6344, 2015 WL 2222438, at *2, *49 (S.D.N.Y. Mar. 19, 2015) (finding a corporation and five individual defendants personally liable under the FLSA).  Without factual allegations that Lin was Plaintiffs' employer to the exclusion of Chen, the mere fact that Lin also may be Plaintiffs' employer is neither here nor there.

When evaluated in the light most favorable to Plaintiffs, the SAC adequately, but barely, pleads that Chen was Plaintiffs' employer during the late period.  But the SAC does not state a claim with respect to Chen during the early period.  As such, the Court grants Defendant Chen's Motion to Dismiss with respect to claims from the early period but denies Defendant Chen's Motion to Dismiss with respect to claims from the late period.

## III.  Conclusion

For the reasons discussed above, Defendant Zhu's Motion to Dismiss is GRANTED in its entirety, and Defendant Chen's Motion to Dismiss is GRANTED in part and DENIED in part. Inasmuch as Plaintiffs have already amended their complaint twice, the Court finds that further leave to amend would be futile.

A status conference for the remaining parties in this matter is hereby scheduled for **Thursday, January 14, 2021, at 2:00 P.M.**  All parties and any interested members of the public must attend by dialing 1-888-363-4749, using the access code 3121171, and the security

code 7291.  All attendees are advised to mute their phones when not speaking and to self-identify each time they speak.  Recording or rebroadcasting the proceeding is  strictly prohibited by law.

By no later than **Friday, January 8, 2021**, the remaining parties must submit a joint letter to the Court on the status of the litigation, including a description of the status of fact and expert discovery and whether any additional discovery needs to be completed, a statement describing the status of any settlement discussions, a statement whether any party anticipates filing future motions, and any other information the parties believe may assist the Court in advancing this case to settlement or trial.

The Clerk of Court is respectfully directed to terminate Defendant Zhu.  The Clerk of Court is further directed to close the open motion at docket entry 124.


**SO ORDERED.**

**Date:   December 29, 2020**
        **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

15